Thomas D. KLEMENS, Colin F. Dearing, Thomas G. Giefer, Roy A. C. Hill, Robert G. Maiers, Plaintiffs,

v.

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Defendant.

No. C79–587(S)R.

United States District Court, W. D. Washington.

Oct. 31, 1980.

See also D.C., 484 F.Supp. 186.

---

David T. Bryant, National Right to Work Legal Defense Foundation, Inc., Fairfax, Va., Jerry B. Edmonds, Williams, Lanza, Kastner & Gibbs, Seattle, Wash., for plaintiffs.

Gary Green, Daniel S. Kozma, Air Line Pilots Association, Washington, D.C., Thomas K. Cassidy, Hafer, Cassidy & Price, Seattle, Wash., for defendant.

## ORDER ON PLAINTIFFS' MOTION TO STRIKE AND MOTION FOR PROTECTIVE ORDER

ROTHSTEIN, District Judge.

THIS CAUSE comes before the Court on plaintiffs' Motion to Strike and Motion for Protective Order. After reviewing the Motions, memoranda, and other pleadings herein, and being fully advised, the Court rules as follows:

Since 1972, an agency shop agreement has been in effect between Northwest Airlines, Inc. (Northwest) and the Air Line Pilots Association, International (ALPA). Under this agreement, ALPA is the exclusive collective bargaining agent for Northwest pilots.

This is an action by five Northwest pilots who were expelled from ALPA. They claim that the circumstances of their expulsion should relieve them of any subsequent duty to pay agency shop "service charges".

The Court has previously ruled that plaintiffs have stated a proper cause of action under section 2, Eleventh, of the Railway Labor Act, 45 U.S.C. § 152, Eleventh. *See* Order of February 12, 1980, reprinted at 484 F.Supp. 186.

Plaintiffs are represented in this action by counsel from the National Right to Work Legal Defense and Education Foundation, Inc. (NRWF), a non-profit foundation which provides legal aid to workers challenging "compulsory unionism".

On or shortly after March 4, 1980, ALPA served plaintiffs with its First Set of Interrogatories and Request for Production of Documents. These inquiries seek information to support the union's Fourth Affirmative Defense. *See* Answer, filed August 25, 1980, at p. 3. By that defense, ALPA alleges that NRWF is an "interested employer association" under 29 U.S.C. § 411(a)(4) which may not lawfully represent the plaintiffs in their suit against the union. The disputed statute is otherwise known as § 101(a)(4) of the Labor–Management Reporting and Disclosure Act of 1959 (LMRDA). It protects the right of union members to institute legal actions against their unions. ALPA bases its Fourth Affirmative Defense upon the second proviso to § 101(a)(4):

... no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

NRWF takes the position that § 101(a)(4) is inapplicable on its face. It has accordingly moved to strike the union's Fourth Affirmative Defense. Even if the statute is held to apply, NRWF resists enforcement of the union's discovery requests, fearing that such inquiries into its contributor lists could

undermine its financial support and effectiveness as a legal aid organization. Finally, NRWF suggests that the second proviso to § 101(a)(4), if applied, would unconstitutionally infringe plaintiffs' rights to legal representation.

ALPA argues for a broad construction of the second proviso. Although § 101(a)(4) purportedly guarantees rights only to union "members", defendant contends that the statute and its proviso should apply equally to non–union workers in an "agency shop". To support this argument, ALPA draws an analogy to the relatively broad construction of "membership" under the National Labor Relations Act (NLRA). For example, in *NLRB v. General Motors Corporation*, 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963), the Supreme Court held that the Wagner Act, which permits labor organizations "to require as a condition of employment membership therein" [29 U.S.C. § 158(a)(3)], also permits the less restrictive requirements of an "agency shop". Relying on *General Motors*, the Ninth Circuit has held that an employee who pays agency shop service charges is a union "member" for purposes of protection from discharge under sections 8(a)(3) and 8(b)(2) of the NLRA. *NLRB v. Hershey Foods Corporation*, 513 F.2d 1083, 1087 (9th Cir. 1975).

For purposes of this case, however, the controlling definition of "member" is that contained in § 3(o) of the LMRDA itself:

"Member" or "member in good standing", when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization.

29 U.S.C. § 402(o). Courts have consistently relied on this definition to determine which persons may assert rights and privileges under § 101(a)(4). *See, e.g., Gavin v. Structural Iron Workers*, 553 F.2d 28, 30 (7th Cir. 1977); *Moynahan v. Pari–Mutuel Employees Guild of California, Local 280*, 317 F.2d 209, 210–211 (9th Cir. 1963), cert. denied, 375 U.S. 911, 84 S.Ct. 207, 11 L.Ed.2d 150 (1964). Plaintiffs reason that because § 3(o) is read narrowly to define those who may obtain relief under section 101(a)(4), it should be read in the same way to decide who is bound by the second proviso.

Plaintiffs have also identified serious constitutional issues which arise if the Court adopts a broad construction of "member" and applies the second proviso to § 101(a)(4). Applying that proviso would effectively deprive plaintiffs of their legal counsel, even though their Complaint has already been found to state a valid cause of action under the Railway Labor Act. Another constitutional problem is posed by ALPA's requests for discovery about NRWF contributors. Disclosure of this information could impair the Foundation's ability to continue raising funds for its legal aid activities. As the Supreme Court said in *United Transportation Union v. State Bar of Michigan*, 401 U.S. 576, 585, 91 S.Ct. 1076, 1082, 28 L.Ed.2d 126 (1971):

The common thread running through our decisions in *NAACP v. Button*, [371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405] [*Brotherhood of Railroad] Trainmen [v. Virginia ex rel. Virginia State Bar*, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89] and *United Mine Workers [Dist. 12 v. Illinois State Bar*, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426] is that collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment.

Discussing the second proviso to § 101(a)(4) and its constitutional implications, the D. C. Circuit has written:

Any law that adversely affects the exercise of first amendment freedoms in connection with legal aid activity must be necessary to correct a serious and substantive evil and must be precisely drawn to serve that purpose. *See, UMW, District 12 v. Illinois State Bar*, 389 U.S. 217, 222, 88 S.Ct. 353, [356], 19 L.Ed.2d 426 (1967).

**738**

*International Union, United Automobile Aerospace and Agricultural Implement Workers of America, et al. v. NRWF,* 590 F.2d 1139, 1147 (D.C.Cir.1978) (*Auto Workers*).

■ The court in *Auto Workers* went on to offer the following rule for construing the second proviso:

> When the constitutionality of a statute is drawn into question, a court must " 'ascertain whether a construction of the statute is fairly possible by which the question may be avoided.' " *IAM v. Street,* 367 U.S. 740, 749–50 [81 S.Ct. 1784, 1790, 6 L.Ed.2d 1141] . . . In deciding among possible interpretations of a statute, the court must select an interpretation that appears to be consistent with the statute's constitutionality.

590 F.2d at 1148.

Plaintiffs in this action have all been expelled from ALPA. They do not seek reinstatement in the union. By a literal reading of 29 U.S.C. § 402(*o*), they do not qualify as "members" under the LMRDA.

By its terms, the second proviso applies to "any such action", which refers back to suits by union members against their unions. The second proviso should apply to no broader group of employees than those whose right to sue is protected under the main part of § 101(a)(4). Applying the definition of "member" in § 3(*o*) of the LMRDA, plaintiffs' suit should not be subject to the proviso.

Although ALPA argues for a broader construction of "member", the Court is unwilling to expand the literal scope of § 3(*o*) without some clear indication that Congress intended such a result. There is no such indication in this record. Indeed, it is plaintiffs' construction which best corresponds to the general scope of § 101(a)(4). The body of that statute relates to intra–union rights (e.g. between regular members and their labor organizations). It follows that the second proviso should correspondingly apply only to actions between unions and their members. A literal application of § 3(*o*) further avoids the serious question of whether the proviso is an unconstitutional restraint on plaintiffs' access to legal counsel.

The Court finds that plaintiffs, having been expelled from ALPA, are not "members", as defined by 29 U.S.C. § 402(*o*). The Court further finds that the second proviso to § 101(a)(4) does not apply to legal actions by employees who are not "members" as defined in § 3(*o*) of the LMRDA. It follows that the second proviso does not apply to plaintiffs' action in this case.

■ Under Rule 12(f), Fed.R.Civ.P., the Court may strike "from any pleading any insufficient defense". The striking of such defenses is a proper means for expediting legal proceedings. *See, e.g., United States v. 416.81 Acres of Land,* 514 F.2d 627, 630 n.3 (7th Cir. 1975) (opinion by Mr. Justice Clark, sitting by designation). A defense is insufficient "if it is clearly invalid as a matter of law". *Anchor Hocking Corporation v. Jacksonville Electric Authority,* 419 F.Supp. 992, 1000 (M.D.Fla.1976).

The granting of motions to strike is not generally favored, because it is difficult to establish that a defense is clearly insufficient. When such a showing is made, however, the Court should grant a motion to strike "to avoid unnecessary time and money in litigating invalid, spurious issues." *Id.,* at 1000.

In this case, ALPA's Fourth Affirmative Defense is clearly insufficient as a matter of law. This conclusion follows from the Court's finding that § 101(a)(4) of the LMRDA does not apply to plaintiffs' action. It is therefore appropriate that ALPA's Fourth Affirmative Defense be stricken from the Answer.

With the second proviso to § 101(a)(4) having been held inapplicable, defendant's proposed discovery no longer bears any apparent relation to the issues at trial. In addition, the granting of such discovery could very well prejudice the activities of NRWF as a legal aid organization. On these facts, it is appropriate to deny enforcement of ALPA's First Set of Interrogatories and Request for Production of Documents.

Plaintiffs' Motion to Strike is accordingly GRANTED. The Clerk is directed to strike the Fourth Affirmative Defense from the copy of defendant's Answer which was filed on August 25, 1980.

Plaintiffs' Motion for a Protective Order is also GRANTED. Rule 26(c), Fed.R.Civ.P. Plaintiffs are accordingly not required to respond to ALPA's First Set of Interrogatories and Request for Production of Documents.

IT IS SO ORDERED.