**BROTHERHOOD OF RAILWAY CAR-MEN OF the UNITED STATES AND CANADA, AFL–CIO, CLC; Brotherhood of Railway Carmen of the United States and Canada, Pacific Fruit Express and Union Pacific Fruit Express Joint Protective Board; Brotherhood of Railway Carmen of the United States and Canada, Local Lodge No. 231, Plaintiffs-Appellants,**

**v.**

**PACIFIC FRUIT EXPRESS COMPANY and Southern Pacific Transportation Company, Defendants-Appellees.**

**No. 80–4002.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1981.

Decided July 20, 1981.

Friedman Weitzman & Friedman, P. C., C. Marshall Friedman, Newton G. McCoy, St. Louis, Mo., for plaintiffs-appellants.

Robert Bogason, San Francisco, Cal., for defendants-appellees.

Before MERRILL, HUG and SKOPIL, Circuit Judges.

MERRILL, Circuit Judge:

The Brotherhoods contend that the collective bargaining agreement between the parties of September 25, 1964, was violated by Pacific Fruit Express (PFE), when, in October, 1979, it announced that it was abandoning its heavy repair facilities in Roseville, California, and transferring the service there offered and the workforce providing that service to its facilities in Tucson, Arizona and other locations. Contending that PFE's right to so act presented a major dispute under the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, the Brotherhoods brought this action seeking an injunction to preserve the status quo pending resolution of the dispute. The district court denied the motion for preliminary injunction and dismissed the action. This appeal was then taken. We affirm.

The agreement of September 25, 1964, article I, § 2, grants to PFE the right to transfer work and to abandon, discontinue or consolidate facilities or services. It would appear that PFE's right to abandon its facilities and transfer work presented a question of interpretation of the provisions of article I, § 2, of the agreement, and thus would present a minor dispute under 45 U.S.C. § 153, First (i)—one "growing out of

* * * the interpretation or application of agreements concerning rates of pay, rules or working conditions"—to be resolved by the National Railroad Adjustment Board or by mediation procedures on which the parties have agreed.[1]

The Brotherhoods point out that concurrently with the announcement by PFE of its transfer of work and abandonment of facilities, its parent corporation, Southern Pacific Transportation Company (SPT), announced the transfer to Roseville of some of its heavy repair work. The Brotherhoods contend that this indicates that the action taken by PFE was not abandonment of facilities, but a coordination or merger of its facilities with those of SPT. They argue that this action is not covered by article I, § 2, and that their right to take such steps presents a major dispute.

The district court rejected this contention. It held that the agreement was "arguably susceptible to defendant's construction," and was thus a minor dispute under the holding of this court in *Switchmen's Union of North America v. Southern Pacific Co.*, 398 F.2d 443, 447 (9th Cir. 1968). We agree.

In *Order of Conductors v. Pitney*, 326 U.S. 561, 565–67, 66 S.Ct. 322, 324–325, 90 L.Ed. 318 (1946), the Supreme Court dealt with the propriety of an injunction under these circumstances:

"But Congress has specifically provided for a tribunal to interpret contracts such as these in order finally to settle a labor dispute. Section 3 First (i) of the Railway Labor Act provides that disputes between a carrier and its employees 'growing out of . . . the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . may be referred . . . by either party to the . . . Adjustment Board.' * * * Not only has Congress thus designated an agency

---

1. The mediation procedures agreed to by the Brotherhoods and PFE in their agreement of September 25, 1964, are in accordance with 45 U.S.C. § 153, First, which does not prohibit the creation of mutually agreed upon special boards of adjustment "for the purpose of adjusting and deciding disputes of the character

specified in this section." The parties do not dispute that use of this special board of adjustment rather than the National Railroad Adjustment Board established in § 153, First, has no effect on the propriety of preliminary injunctive relief in this case.

peculiarly competent to handle the basic question here involved, but as we have indicated in several recent cases in which we had occasion to discuss the history and purpose of the Railway Labor Act, it also intended to leave a minimum responsibility to the courts.

\* \* \* And since all parties seek to support their particular interpretation of these agreements by evidence as to usage, practice and custom, that too must be taken into account and properly understood. The factual question is intricate and technical. An agency especially competent and specifically designated to deal with it has been created by Congress. Under these circumstances the court should exercise equitable discretion to give that agency the first opportunity to pass on the issue. Certainly the extraordinary relief of an injunction should be withheld, at least, until then."

We adopt this reasoning here and affirm the district court's decision to deny preliminary injunctive relief and to leave the resolution of the dispute to the mediation procedures agreed to by the parties in their agreement of September 25, 1964.

■ The Brotherhoods also urge that it was error for the district court to dismiss the entire action without having first expressly ordered that the hearing on the preliminary injunction be consolidated with the hearing on the merits under Fed.R. Civ.P. 65(a)(2). Appellants argue that dismissal of the action in this manner denied them an opportunity for discovery. We conclude that while it might have been preferable for the district court to have given notice, under the circumstances of this case the de facto consolidation was not reversible error.

The issue before the district court on the merits of this case was not how the agreement should be interpreted. That, as the Supreme Court noted, is a factual question that can be "intricate and technical." *Order of Conductors v. Pitney, supra*, 326 U.S. at 567, 66 S.Ct. at 325. That question remains to be decided in the proper forum, and in that forum the Brotherhoods will have ample opportunity to press for their position on the facts.

The question before the district court and before us is who shall decide that factual question: whether the courts should interpret the contract or whether we should leave that task to the National Railroad Adjustment Board or to mediation pursuant to agreement. This question is one of law, and, as we have noted, under the holdings of the Supreme Court and past holdings of this court, the answer is clear.

Judgment affirmed.