**H.D. FECHTELKOTTER, et al.,**
**Plaintiffs-Appellees,**

v.

**AIR LINE PILOTS ASSOCIATION, IN-**
**TERNATIONAL, Defendant-Appellant.**

**No. 81–4029.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 1982.

Decided Dec. 1, 1982.

Gary Green, Washington, D.C., for defendant-appellant.

John Bacheller, Jr., Bacheller, Shade & McDonald, Atlanta, Ga., for plaintiffs-appellees.

Before MERRILL, KENNEDY and CANBY, Circuit Judges.

CANBY, Circuit Judge.

The Air Line Pilots Association (ALPA) appeals from the district court's judgment setting aside fines ALPA assessed against six of its member pilots.

## FACTS

During September of 1977, flight attendants, employed by Transamerica Airlines, Inc. (Transamerica) and represented by the Teamsters Union, went on strike in a dispute over new contract terms. ALPA, the exclusive bargaining representative for Transamerica pilots, decided to honor the Teamster picket line. In the weeks that followed virtually all of Transamerica's more than 300 pilots refused to fly, grounding almost all of its commercial flights.[1] After a month of support for the flight attendant's strike, ALPA began negotiating with Transamerica and reached a back-to-work agreement under which the pilots returned to work in November, 1977. The agreement included the following clause:

"There shall be no reprisals or recriminations by either side as a result of activities during the strike."

After the pilots returned to work, ALPA instituted disciplinary proceedings against pilots who had flown during the sympathy strike and fined them the amounts they had earned by such flying. The pilots refused to pay the fines and brought this action in federal district court, alleging that by disciplining the pilots the union had violated the terms of the "no-reprisal" clause and breached its contract with Transamerica. The pilots alleged standing to sue in their own names as third party beneficiaries of the agreement. The pilots further alleged that ALPA had violated its statutory duty of fair representation by fining the pilots in violation of the "no-reprisal" clause. After ALPA's motion for summary judgment motion was denied, the case was tried to the court.

The district court interpreted the "no-reprisal" clause as prohibiting ALPA from disciplining the pilots who flew during the strike; it therefore set aside the fines. The court also found, however, that the union's decision to discipline pilots who flew during the strike "stemmed from ALPA's understandable misinterpretation of [the no-reprisal clause], and not any deceit, improper union intent, or bad faith." It found no evidence that the fines were selectively or discriminatorily imposed: "ALPA's action in initiating disciplinary proceedings does not amount to 'fraud, deceitful action, or dishonest conduct' which is necessary to establish a violation of the duty of fair representation. *Buzzard v. Local Lodge 1040 Int'l. Ass'n. of Mach. and A. Workers*, 480 F.2d 35, 40 (9th Cir.1973); *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971)." The pilots have filed no cross-appeal from the district court's decision that ALPA did not violate its duty of fair representation.

The district court also held that the action was not barred because the pilots' employer was paying their litigation expenses. It ruled that § 101(a)(4) of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 411(a)(4), which prohibits employers from financing union members' actions against unions, did not apply because the present litigation was not brought under the LMRDA.

In its appeal, ALPA contends: first, that the district court lacked subject matter jurisdiction to interpret the contract and set aside the fines; second, that the district court incorrectly interpreted the "no-reprisal" clause of the back-to-work agreement; and third, that the action was barred by § 101(a)(4) of the LMRDA. Since we hold that the district court did not have subject matter jurisdiction to interpret and enforce the "no-reprisal" clause absent a violation of the union's statutory duty to represent its members fairly, we need not decide the latter two issues.

1. We addressed the issues raised by this strike in our opinion in *Trans International Airlines,* *Inc. v. International Brotherhood of Teamsters,* 650 F.2d 949 (9th Cir.1980).

## JURISDICTION

■ The pilots asserted, and the trial judge below held, that the district court had subject matter jurisdiction over this case under both the Railway Labor Act (RLA), 45 U.S.C. §§ 151–188, and § 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). The pilots have carefully avoided any attempt to invoke the LMRDA because Transamerica is supporting the litigation.[2]

The RLA has governed labor relations of airlines since 1936. 45 U.S.C. § 181 (1976). We therefore must view the assertion of jurisdiction in light of the policy and history of the RLA. "The role of the courts in enforcing substantive obligations under the RLA is circumscribed by the Act's unique history and dispute resolution framework." *Air Line Pilots Ass'n v. Texas Int'l Airlines,* 656 F.2d 16, 19 (2d Cir.1981). The Act consists of "a unique blend of moral and legal duties looking toward settlement through conciliation, mediation, voluntary arbitration, presidential intervention, and finally, in case of ultimate failure of the statutory machinery, resort to traditional self-help measures." *Chicago v. N.W. Ry. Co. v. United Transportation Union,* 402 U.S. 570, 589, 91 S.Ct. 1731, 1741, 29 L.Ed.2d 187 (1971) (Brennan, J., dissenting). As Justice Brennan noted, in each case where the Supreme Court approved judicial intervention in RLA disputes, "the scheme of the Railway Labor Act could not begin to work without judicial involvement. That is, unless the unions fairly represented all of their employees ... the statutory mechanism could not hope to induce a negotiated settlement." *Id.* at 595, 91 S.Ct. at 1744. *See also Summit Airlines v. Teamsters Local Union No. 295,* 628 F.2d 787, 789–793 (2d Cir.1980).

Since the RLA reflects such strong policies in favor of arbitration and against judicial intervention, *see General Committee v. Missouri-Kan.-Tex. R. Co.,* 320 U.S. 323, 336–338, 64 S.Ct. 146, 152–53, 88 L.Ed. 76 (1943), it is crucial that the pilots demonstrate a specific right to federal judicial relief against their union for "misinterpreting" the "no reprisal" clause. Absent some clear basis in the RLA for the district court's jurisdiction, the court must defer to the dispute settlement procedures of the Act. *Summit Airlines, supra; ALPA v. Texas Int'l, supra.*

The district court asserted that it had jurisdiction over the pilots' claim under the RLA, relying upon *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, and *Brady v. Trans World Airlines,* 401 F.2d 87 (3d Cir.1968), *cert. denied,* 393 U.S. 1048, 89 S.Ct. 684, 21 L.Ed.2d 691, *cert. denied,* 394 U.S. 955, 89 S.Ct. 1272, 22 L.Ed.2d 492 (1969). Both those cases, however, involved a valid claim that the union violated its statutory duty of fair representation, not claims that a union's interpretation of a contract was mistaken.[3] *Conley* and *Brady*

---

2. LMRDA § 101(a)(4) provides, in pertinent part:

   No labor organization shall limit the right of any member thereof to institute an action in any court ... *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action proceeding, appearance, or petition.*

   29 U.S.C. § 411(a)(4) (emphasis added.)

3. The pilots argue that the district court has jurisdiction to consider the present contract interpretation dispute because neither the col-

lective bargaining agreement nor § 204 of the RLA, 45 U.S.C. § 184, conferred authority on the Transamerica-ALPA Systems Adjustment Board to resolve disputes between the union and its members. A federal district court, however, cannot base its subject matter jurisdiction simply on the fact that the systems adjustment board has none.

We believe that the systems adjustment board may have jurisdiction over this contract interpretation dispute. Although we do not decide that question here, ALPA argues that Transamerica has demonstrated a sufficient interest in this dispute to make it cognizable by the systems adjustment board as a dispute between Transamerica and ALPA. The pilots are asserting contractual rights that Transamerica allegedly negotiated on behalf of the pilots who had not honored their union's sympathy strike. Although Transamerica has not been named as

dealt with the question whether a claim for violation of the union's duty to represent fairly must be heard first by the adjustment board if, to resolve that claim, the board must interpret the collective bargaining agreement. *See Conley v. Gibson,* 355 U.S. at 44, 78 S.Ct. at 101; *Brady,* 401 F.2d at 96.[4] These unfair representation cases have no application here, because the union did not violate its duty to represent fairly and the pilots have shown us no other statutory basis for subject matter jurisdiction. Even if the claim is not within the jurisdiction of the systems adjustment board,[5] the district court has no basis for jurisdiction because the claim implicates no statutory right arising out of the provisions of the Railway Labor Act. Once the district court

determined that ALPA had not violated its duty of fair representation, the pilots' suit should have been dismissed.

■ Federal district courts sometimes may enforce awards of system adjustment boards set up by each airline and union under the RLA, and the Supreme Court has found an implied private right of action arising out of § 204 of the Act, 45 U.S.C. § 184, to enforce such awards. *Int'l Ass'n of Machinists v. Central Airlines,* 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963). Here, since the dispute was never presented to the adjustment board, the pilots cannot invoke district court's jurisdiction to enforce an award.[6]

■ The pilots also cannot assert rights under Section 301(a) of the NLRA[7]. The

a party to this suit, it has manifested its keen interest in enforcing the "no-reprisal" agreement. It suggested and paid for an attorney for the pilots to bring this action, and furnished the principal testimony concerning both the negotiation of the "no reprisal" clause and Transamerica's understanding that the clause was to protect the pilots from internal union discipline.

Furthermore, if Transamerica had not encouraged and paid for the pilots lawsuit, they could have sought the intra-union remedies available under the LMRDA. We do not propose by expansive notions of jurisdiction to grant appellees here a way to circumvent the clear intent of Congress to prohibit management-financed LMRDA lawsuits.

4. In *Conley,* black railway employees sued their union after the union agreed to their employer's plan to "abolish" 45 jobs held by blacks. The railroad then hired white workers to fill the same number of "new" jobs except for a few instances where blacks were rehired to fill their old jobs but with loss of seniority. *Conley, supra,* 355 U.S. at 43, 78 S.Ct. at 100. In *Brady,* the Third Circuit held that the district court had subject matter jurisdiction over an employee's allegation that his rights under Section 2 (Eleventh) of the RLA, 45 U.S.C. § 152 (Eleventh), had been violated. *Brady, supra,* 401 F.2d at 95–96.

In *Ransdell v. Int'l Assn. of Machinists & Aerospace Workers,* 443 F.Supp. 936 (E.D. Wisc.1978), discussed in note 7 *infra,* the explicit nature of the "no-reprisal" clause made the union discipline a violation of the duty of fair representation under the RLA, *not* § 301 of the LMRA.

5. The Supreme Court has held that unfair representation claims "[are] not within the jurisdiction of the National Adjustment Board or

subject to the ordinary rule that administrative remedies should be exhausted before resort to the courts." *Czosek v. O'Mara,* 397 U.S. 25, 27–28, 90 S.Ct. 770, 772–73, 25 L.Ed.2d 21, (1970); *Glover v. St. Louis-San Francisco Ry. Co.,* 393 U.S. 324, 328–29, 89 S.Ct. 548, 550–51, 21 L.Ed.2d 519, (1969); *Conley v. Gibson, supra,* 355 U.S. at 44–46, 78 S.Ct. at 101–02 (1957). "The claim against the union defendants for breach of their duty of fair representation is a discrete claim quite apart from the right of individual employees ... to pursue their employer before the Adjustment Board." *Czosek v. O'Mara, supra,* 397 U.S. at 27–28, 90 S.Ct. at 772–73 (footnote omitted).

6. See footnote 3.

7. LMRA § 301(a) (codified at 29 U.S.C. § 185(a) provides in pertinent part:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Several courts have stated that a "no reprisal" clause in a back-to-work agreement is a "contract" cognizable under § 301 of the LMRA. *Adamszewski v. Local Lodge 1487, Int'l Ass'n of Machinists & Aerospace Workers,* 496 F.2d 777, 786 (7th Cir.), *cert. denied,* 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 271 (1974) (dictum); *Ransdell v. International Association of Machinists & Aerospace Workers,* 443 F.Supp. 936, 939 (E.D.Wisc.1978) (holding); *see also Retail Clerks Int'l Ass'n v. Lion Dry Goods Inc.,* 369 U.S. 17, 25–30, 82 S.Ct. 541,

airline pilots, their union, and Transamerica are subject to the RLA; sections 2(2) and (3) of the NLRA [8] consequently define them out of LMRA coverage. *See Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 376–377, 89 S.Ct. 1109, 1114, 22 L.Ed.2d 344 (1969); *Raus v. Brotherhood of Ry. Carmen,* 663 F.2d 791, 794 (8th Cir.1981). Although analogies drawn from the LMRA are sometimes useful in determining rights of RLA employees, the LMRA has no direct application to actions brought by RLA employees. *Jacksonville Terminal, supra,* 394 U.S. at 377, 391, 89 S.Ct. at 1114, 1122.

The one exception applicable here to the strict pattern of judicial deference to the procedures of the RLA occurs when the union violates its statutory duty of fair representation. That duty applies equally to both the RLA and the LMRA; while it usually is discussed in terms of the latter Act, the duty was first recognized in *Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), a case which arose under the RLA. The Supreme Court implied the duty as a necessary corollary to the union's status as the exclusive representative of all the employees in a particular bargaining unit. *See Int'l Bhd. of Electrical Workers v. Foust,* 442 U.S. 42, 46–47, 99 S.Ct. 2121, 2124–25, 60 L.Ed.2d 698 (1979). Since the duty of fair representation arises under both the RLA and the NLRA and both acts regulate commerce, 28 U.S.C. § 1337 provides jurisdiction for dis-

trict courts to consider unfair representation claims. *Felter v. Southern Pacific Co.,* 359 U.S. 326, 79 S.Ct. 847, 3 L.Ed.2d 854 (1959); *Tunstall v. Brotherhood of Locomotive Firemen & Enginemen,* 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); *Raus v. Bhd. of Ry. Carmen, supra,* 663 F.2d at 796; *Retana v. Apartment, Motel, Hotel & Elevator Operators Union, Local No. 14,* 453 F.2d 1018, 1021–22 (9th Cir.1972).

Appellees and the district court relied on *Buzzard v. Local Lodge 1040, Int'l Ass'n of Machinists & Aerospace Workers,* 480 F.2d 35 (9th Cir.1973), for their contention that LMRA § 301 applies to actions brought by RLA employees. *Buzzard,* however, cannot stand for that proposition. The question before this court in *Buzzard* was whether the union's duty of fair representation included the obligation to honor rights conferred on employees by a union promise of "no reprisals" in a strike settlement agreement. *Id.* at 40. We held that it does—but "for such a claim to succeed, there must be 'substantial evidence of fraud, deceitful action, or dishonest conduct' on the part of the union." *Id.* (citations omitted.) The *Buzzard* court did discuss the union's duty to represent fairly in terms of § 301 of the LMRA. That discussion was unnecessary, however, since the duty of fair representation is the same under the LMRA or the RLA. *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). Thus, it was of no consequence in *Buzzard* which Act gave rise to the duty; there we

546–49, 7 L.Ed.2d 503 (1962). In *Ransdell,* the district court held the union liable to employees for breach of contract for failing to abide by a no-reprisal clause that expressly prohibited the union from any discipline of its members who had worked during the strike. The court found jurisdiction over the action in § 301 of the LMRA, citing *Buzzard v. Local Lodge 1040,* 480 F.2d 35, 40 (9th Cir.1973). The court determined that the union members have standing to bring an action against the union for refusing to honor the union promises contained in the no-reprisal agreements. For reasons outlined below, we believe the *Ransdell* court misinterpreted *Buzzard* and erred in applying § 301 to employees subject to the RLA.

**8.** NLRA § 2 (codified at 29 U.S.C. § 152) provides in pertinent part:

When used in this subchapter—

\* \* \* \* \* \*

(2) The term "employer" ... shall not include ... any person subject to the Railway Labor Act....

(3) The term "employee" ... shall not include ... any individual employed by an employer subject to the Railway Labor Act...

\* \* \* \* \* \*

(5) The term "labor organization" means any organization ... in which employees participate and which exists for the purpose ... of dealing with *employers* ....

(Emphasis added)

Because, ALPA does not have "employees" as members and does not deal with an "employer" for purposes of the LMRA, it is not a "labor organization" under that Act.

simply considered whether the union could violate that duty by denying rights conferred under a settlement agreement. *Buzzard* could not have intended to create under the NLRA, for employees not covered by the NLRA, a discrete claim for union acts that do not violate the duty of fair representation. *Buzzard* should not be read as subjecting those covered by the RLA to the provisions of the LMRA.

ALPA's duty to represent its members fairly was properly before the district court. *See Buzzard, supra.* The district court squarely held that the union did not violate its duty of fair representation. While disagreeing with the union's interpretation of the "no reprisal" clause,[9] the district court found that the union's decision to discipline "entirely stemmed from ALPA's understandable misinterpretation of [the clause], and not any deceit, improper union intent, or bad faith." The pilots have not cross-appealed the denial of their unfair representation claim, so we are entitled to accept these determinations of the district court for purposes of this appeal. We note, however, that there was ample support for the court's rulings. The "no-reprisal" clause was written in general terms that did not expressly prohibit union discipline. There was no evidence that ALPA selectively or discriminatorily enforced its disciplinary rules. In unfair representation cases, moreover, the "distinction ... between honest, mistaken conduct, on the one hand, and deliberate and severely hostile and irrational treatment, on the other, needs strictly to be maintained." *Motor Coach Employees of America v. Lockridge,* 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971). It is clear that to show a breach of the duty fairly to represent there must be " 'substantial evidence of fraud, deceitful action, or dishonest conduct.' " *Buzzard v. Local Lodge 1040,* 480 F.2d 35, 40 (9th Cir.1973), *quoting Lockridge, supra,* 403 U.S. at 299, 91 S.Ct. at 1924, and *Humphrey v. Moore,* 375 U.S. 335, 348, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964). The subject matter jur-

isdiction to consider a claim for a union's honest, though mistaken, conduct cannot be based upon the court's jurisdiction over an unfair representation claim.

Stripped of the allegation that the union violated its duty of fair representation the pilots must rely on a theory that they are third party beneficiaries of a purely contractual, non-statutory right which Transamerica, not the union, negotiated on their behalf: an exemption from union discipline. We have not been shown any evidence that the Railway Labor Act was intended as a vehicle for the enforcement in federal district court of such rights by employees.

REVERSED.

---

**9.** Because we hold that the district court had no subject matter jurisdiction to grant relief based upon the union's good faith misinterpre-tation of the contract, we do not decide whether the district court interpreted the contract properly.