**BROTHERHOOD OF TEAMSTERS AND AUTO TRUCK DRIVERS LOCAL NO. 70 OF ALAMEDA COUNTY, Capp, Robert L.; Halliday, John P. Jr.; Lewis, Howard S.; Orman, Kenneth E.; Tamborski, John W.; Derrick, Robert L.; Hedge, Richard M.; Lydon, Daniel J.; Pratt, William H. Jr.; Trejo, August; DiCherico, Jeff; Hostnick, Donald D.; Morgan, Bill D.; Schilling, Barry M.; Undeen, Jon A.; DiCherico, Vincent T.; Howard, James E.; Morgan, Leslie T. and Swiney, Truman, Plaintiffs-Appellants,**

v.

**WESTERN PACIFIC RAILROAD COMPANY, Western Pacific Transport Company and Union Pacific Corporation, Defendants-Appellees.**

No. 86–1810.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 1986.

Decided Feb. 4, 1987.

As Amended April 21, 1987.

David A. Rosenfeld and Stewart Weinberg, San Francisco, Cal., and David F. Offen-Brown, Oakland, Cal., for plaintiffs-appellants.

James C. Martin, Oakland, Cal., for defendants-appellees.

Before KENNEDY and BOOCHEVER, Circuit Judges, and STEPHENS,* District Judge.

STEPHENS, Senior District Judge:

The individual plaintiffs and their union allege that the defendants are obligated to provide lifetime employment to the individual plaintiffs pursuant to a provision in a collective bargaining agreement. The district court denied plaintiffs' motion for a preliminary injunction and granted summary judgment in favor of defendants. This court concludes that the judgment should be vacated due to a lack of subject matter jurisdiction.

Prior to its merger with Union Pacific Railroad Company (Union Pacific), Western Pacific Railroad Company (Western Pacific) maintained a ramp facility in Oakland where ramping and trucking operations were performed. The ramping work involved the loading and unloading of truck-trailers onto and from railroad flatcars. The trucking operations involved delivery of the trailers to and from locations in the Bay Area.

From 1973 to 1979, Western Pacific Transport Company (Transport), a subsidiary of Western Pacific, performed both the ramping and trucking work at the facility. It employed members of the Teamsters Local No. 70 and had a collective bargaining agreement with the union which represented and bargained on behalf of the named individual plaintiffs. In 1979, Western Pacific created a new subsidiary named the Feather River Intermodal Services Company (FRISCO) to perform the loading and unloading work at the facility. Transport continued to perform the trucking work.

When FRISCO was formed, Local No. 70 negotiated a "Transfer Agreement" with Transport and FRISCO which provided for the transfer of certain Transport employees, with their seniority rights intact, to FRISCO. The agreement included the following paragraph (hereinafter the "successor rights provision"), which is the basis of this litigation: "The continued successor rights of F.R.I.S.C.O. employees in the event the ramping and deramping work is contracted out to another carrier shall be guaranteed by the Western Pacific Railroad Company."

---

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation.

After the execution of the Transfer Agreement, the individual plaintiffs were transferred from the payroll of Transport to the payroll of FRISCO and continued to perform the loading and unloading work as they had for Transport. FRISCO agreed to be bound by the same collective bargaining agreement in effect between Local No. 70 and Transport, and the Transfer Agreement was formally incorporated into a rider to the FRISCO-Local No. 70 collective bargaining agreement.

One year later in 1980, Western Pacific sold FRISCO to an unrelated Chicago company called Reacon. Reacon continued performing the same work that FRISCO had and retained the name FRISCO for its operations. It also accepted the existing agreement in effect between FRISCO and Local No. 70. When that agreement expired in 1982, Reacon and Local No. 70 negotiated a new and substantially modified three-year contract. In the course of the negotiations, Reacon refused to agree to the language in the Transfer Agreement regarding successor rights. Consequently, the resulting agreement did not contain the successor rights provision. For clarity in this regard, the new agreement expressly stated that all previous agreements were void and superseded.

During the period when Reacon operated FRISCO, Western Pacific merged with Union Pacific. When the 1982 agreement between Western Pacific and Reacon regarding the ramping operations expired in 1985 it was not renewed. Instead, Union Pacific hired Union Pacific Motor Freight Company to perform the loading and unloading. In January 1986, Union Pacific Motor Freight replaced the individual plaintiffs with its own employees.

Local No. 70 and the individual plaintiffs filed suit alleging that the successor rights provision in the Transfer Agreement was, in effect, a guarantee of lifetime employment to the individual plaintiffs by Western Pacific and that Union Pacific assumed this obligation by virtue of the merger. The plaintiffs also filed a motion for a preliminary injunction seeking their immediate reinstatement to their former jobs. The defendants opposed the motion and filed a motion for summary judgment alleging that there was no obligation or agreement in existence between the parties. The district court denied the motion for a preliminary injunction and granted summary judgment in favor of the defendants. The court ruled that the plaintiffs had abandoned their rights under the successor rights provision at the bargaining table with Reacon in 1982. The plaintiffs then filed a timely appeal.

The issue on appeal is whether the successor rights provision is a guarantee of lifetime employment by Western Pacific that survived the expiration of the collective bargaining agreement in which it was contained. The plaintiffs argue that it was the contracting parties' intent to have the provision survive the agreement's expiration. The defendants argue that Western Pacific never guaranteed the successor rights and that the provision, along with the agreement as a whole, was superseded and voided by the plaintiffs' agreement with Reacon.

■ A jurisdictional issue must be addressed before proceeding to the merits. The plaintiffs contend that the district court had jurisdiction over this case pursuant to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. sec. 185(a). However, the plaintiffs made it clear that this is a suit to enforce disputed obligations against the railroad defendants. *See, e.g.,* Plaintiffs-Appellants Excerpt of Record Exhibit No. 14.[1] Railway labor disputes between railroads and their alleged employees fall within the scope of the Railway Labor Act, 45 U.S.C. secs. 151–188, and federal courts may not exercise jurisdiction over such disputes pursuant to Section 301(a). *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369,

---

1. Exhibit No. 14 is plaintiffs' Concluding Memorandum In Support of Motion for Preliminary Injunction And In Opposition To Motion For Summary Judgment. In it, plaintiffs state: "We seek relief from the railroad, which guaranteed the employment of these individuals. If the Court grants the injunction, the railroad will be required to hire the plaintiffs to perform the work, either directly or through another subcontractor."

376, 89 S.Ct. 1109, 1114, 22 L.Ed.2d 344 (1969).

Plaintiffs argue that the Railway Labor Act does not apply because one of the defendants, Transport, is not a railroad. However, it is necessary to look at the substance of the dispute. *E.g., id.; Pan American World Airways v. United Brotherhood of Carpenters*, 324 F.2d 217 (9th Cir.1963), *cert. denied*, 376 U.S. 964, 84 S.Ct. 1122, 11 L.Ed.2d 982 (1964). Viewed from this perspective, this case is essentially a railway labor dispute between the railroad and certain of their employees. This dispute arises out of a labor agreement negotiated by a labor union on behalf of certain of its members and requires interpretation of the labor agreement.

When a railway labor dispute involves the interpretation of a collective bargaining agreement, the Railway Labor Act requires that it be submitted to arbitration; the federal courts do not have jurisdiction to resolve the dispute. *International Ass'n of Machinists v. Aloha Airlines*, 776 F.2d 812, 815 (9th Cir.1985); *Fechtelkotter v. Air Line Pilots Ass'n Int'l*, 693 F.2d 899 (9th Cir.1982).[2] Congress designed the Act to leave the resolution of many types of railway labor disputes to the machinery of arbitration, mediation, and bargaining. *Klemens v. Air Line Pilots Ass'n Int'l*, 736 F.2d 491, 497 (9th Cir.1984); *e.g., Crusos v. United Transp. Union, Local 1201*, 786 F.2d 970 (9th Cir.1986). The Act reflects strong policies in favor of arbitration and against judicial intervention. *Fechtelkotter*, 693 F.2d at 901.

The defendants argue that there is no agreement binding the parties. Their position could lead to the conclusion that no interpretation of an agreement is involved because there is no agreement at all and that federal court jurisdiction is therefore proper. *E.g., Goclowski v. Penn Central Transp. Co.*, 571 F.2d 747, 756 (3rd Cir. 1977). However, *Switchmen's Union of North America v. Southern Pacific Co.*, 398 F.2d 443, 447 (9th Cir.1968), held that

"where the position of one or both of the parties is expressly and arguably predicated on the terms of the agreement," the suit involves the interpretation of an agreement and must be submitted to arbitration. The plaintiffs have expressly predicated this action upon the terms of the agreement. *See, e.g., Brotherhood of Railway Carmen v. Pacific Fruit Express Co.*, 651 F.2d 651, 652 (9th Cir.1981) (court followed *Switchmen's Union* and held that if agreement is "arguably susceptible" to party's construction it must be submitted to arbitration pursuant to the Act).

The district judge's view of the merits is understandable. However, the federal courts are not the proper forum to resolve this dispute. The grant of summary judgment in favor of defendants is vacated and the case is remanded to the district court which should dismiss the case for lack of subject matter jurisdiction.

---

**2.** Such a dispute is termed a "minor" one for purposes of the Act. *See Aloha Airlines*, 776 F.2d at 815 (explaining the distinction between a "minor" and "major" dispute).

