Thomas D. KLEMENS, Colin F. Dearing,
Thomas G. Giefer, Roy A. C. Hill,
Robert G. Maiers, Plaintiffs,

v.

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL, Defendant.

No. C79–587S.

United States District Court,
W. D. Washington.

Feb. 12, 1980.

David T. Bryant, National Right to Work Legal Defense Foundation, Inc., Fairfax, Va., Jerry B. Edmonds, Williams, Lanza, Kastner & Gibbs, Seattle, Wash., for plaintiffs.

Gary Green, Daniel S. Kozma, Air Line Pilots Ass'n, Washington, D. C., Thomas K. Cassidy, Hafer, Cassidy & Price, Seattle, Wash., for defendant.

## AMENDED ORDER ON DEFENDANT'S MOTION FOR DISMISSAL, OR ALTERNATIVELY FOR SUMMARY JUDGMENT

MORELL E. SHARP, District Judge.

In 1972, the plaintiff, Thomas D. Klemens, was employed as a pilot by Northwest Airlines, Inc. (Northwest). He was a member of the Air Line Pilots Association, International (ALPA), the statutory exclusive collective bargaining agent for Northwest pilots. Since October 3, 1972, an "agency shop" agreement was in effect between Northwest and ALPA.

In 1972 after the termination of a pilots' strike, a number of Northwest pilots with low seniority were not immediately recalled to active flying status. On October 6, 1972, the Northwest Master Executive Council (MEC) passed resolution 1–72, which authorized an assessment upon working Northwest pilots to pay a monthly benefit to the Northwest pilots who were not recalled.

Mr. Klemens refused to pay the 1–72 assessment because it was levied only against Northwest pilots and not against the ALPA membership as a whole. However, Mr. Klemens continued to pay his regular membership dues to ALPA until October, 1975, when he was expelled from the union for failure to pay the 1–72 assessment.

After his expulsion from ALPA, Mr. Klemens refused to pay the "service charge" (equivalent to dues) which is generally required from non-union employees under the "agency shop". He based his refusal upon Section 2, Eleventh, of the Railway Labor Act [45 U.S.C.A. § 152, Eleventh].

By letter dated December 8, 1976, ALPA requested Northwest to discharge Mr. Klemens for delinquency in "service charge" obligations under the Union Security Agreement. When Northwest threatened to discharge Mr. Klemens, the latter paid his alleged deficiency to ALPA, whereupon the union withdrew its request for his discharge.

On May 8, 1979, Mr. Klemens filed a Complaint seeking a declaratory judgment that he is not obligated to pay the ALPA "service charge" which he is currently rendering under protest. He is joined by pilots Hill, Maiers, and Giefer, who are similarly if not identically situated. He is also joined by pilot Dearing, who was expelled from ALPA for refusing to return an alleged overpayment of strike benefits. Their common claim is that their union membership was "terminated for [a] reason other than the failure . . . to tender the periodic dues, initiation fees, and assessments . . . uniformly required as a condition of acquiring or retaining membership." 45 U.S.C.A. § 152, Eleventh (a). Plaintiffs also argue that ALPA has breached its duty of fair representation.

The defendant responds that the above-quoted language from section 152, Eleventh, was incorporated into section (a)(1) of the Union Security Agreement between ALPA and Northwest, as follows:

Membership in the Association or payment of the aforesaid service charge shall not be a condition of employment for any pilot to whom membership is denied or terminated for any reason other than the failure to tender the periodic dues, initiation fees and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership in the Association, . . .

The Union contends that the plaintiffs' claims are strictly contractual and bound by the grievance-arbitration procedure set forth in section (e) of the Union Security Agreement. ALPA denies that plaintiffs have a cause of action under the Railway Labor Act which is cognizable by this Court, and it moves to dismiss the Complaint. The union insists that arbitration is compelled both by the Railway Labor Act and by general federal labor policy, as developed by case law. Finally, the defendant argues that no rights arise under the federal statute unless plaintiffs have first been discharged. As an alternative to an Order of Dismissal, ALPA seeks summary judgment in its favor.

After reviewing the Motion, memoranda, and pleadings filed herein, and being fully advised, the Court rules as follows:

■ Plaintiffs' claim is within the subject matter jurisdiction of this Court if it arises "under any Act of Congress regulating commerce." 28 U.S.C. § 1337. The Railway Labor Act has been held to qualify as such an "Act" for purposes of federal court jurisdiction. *See, e. g., Felter v. Southern Pacific Co.*, 359 U.S. 326, at 329, 79 S.Ct. 847, at 851, 3 L.Ed.2d 854 (1959). Indeed, Congress intended labor organizations to "be held accountable for violations of section 2 . . . (Eleventh)", *Brady v. Trans World Airlines*, 401 F.2d 87, at 102 (3rd Cir. 1968), *cert. denied* 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691, *rehearing denied* 394 U.S. 955, 89 S.Ct. 1272, 22 L.Ed.2d 492 (1969).

■ Plaintiffs have stated a cause of action under Section 2, Eleventh, of the Railway Labor Act, 45 U.S.C. § 152, Eleventh. Defendant suggests that this provision merely authorizes a union shop (and by construction, an "agency shop"). However, this reading ignores the proviso to that section which states that such labor agreements shall not require membership (or by construction, the payment of alternative "service charges") from employees whose union membership was

denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments . . . uniformly required as a condition of acquiring or retaining membership.

The mere fact that section (a) of the Union Security Agreement between Northwest and ALPA incorporates the language of Section 2, Eleventh, does not reduce public rights under the statute to exclusively private contractual rights. *See Brady, supra*, 401 F.2d at 95–96. This Court's jurisdiction over claims arising under federal statutes is not so easily foreclosed.

Moreover, the defendant has cited no specific language in the Railway Labor Act which requires the present dispute to be arbitrated. At 45 U.S.C. §§ 183–184, the Act designates certain disputes "between an employee or [a] group of employees and a carrier or carriers" for mediation or arbitration, but the Act does not require such handling of disputes between employees and their bargaining representatives. In fact, the defendant conceded that the present claim is not within the jurisdiction of the System Board of Adjustment (in oral argument before this Court, October 12, 1979). *See also Brady, supra*, 401 F.2d at 92. It follows that

Since the controversy arises under the laws of the United States, 45 U.S.C., Section 151 et seq., . . . the case is within the jurisdiction of the District Court, 28 U.S.C., Sections 1332 and 1337, unless under the Railway Labor Act jurisdiction is vested in one of the administrative boards.

*Brotherhood of Railroad Trainmen v. Smith*, 251 F.2d 282, at 285 (6th Cir. 1958).

The defendant union contends that broad federal policy favors the arbitration of this labor dispute, but its authority for this contention is inapposite. ALPA cites cases arising in the collective bargaining context, i. e. between labor and management. There, arbitration is favored as a "substitute for industrial strife", *United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, at 578, 80 S.Ct. 1347, at 1350, 4 L.Ed.2d 1409 (1960), or as a *quid pro quo* for a union's agreement not to strike, *Boys Markets, Inc. v. Retail Clerk's Union, Local 770*, 398 U.S. 235, at 248, 90 S.Ct. 1583, at 1591, 26 L.Ed.2d 199 (1970). Those rationales for arbitration do not apply in the present suit by employees against their bargaining representative.

▪ Moreover, this case is distinguishable from those cited by the defendant in which federal courts required employees to pursue intraunion remedies before going to court. *See Buzzard v. Local Lodge 1040 of the International Association of Machinists and Aerospace Workers*, 480 F.2d 35 (9th Cir. 1973); *Frederickson v. System Federation No. 114*, 436 F.2d 764 (9th Cir. 1970). Here, by contrast, there is no allegation of unexhausted remedies available under ALPA's Constitution or bylaws. Rather, the question is whether the grievance procedure outlined in section (e) of the Union Security Agreement is binding upon plaintiffs in the claim at bar.

On these facts, section (e) of the Union Security Agreement is not applicable. By its express terms, it applies only to

A grievance by an employee who is to be discharged as the result of an interpretation or application of the provisions of this Union Security Agreement. . . .

The plaintiffs correctly point out that since the Plaintiffs are currently paying the required service fees, there is nothing to trigger the sequence of events leading up to the contractual arbitration proceeding.

Plaintiffs' Memorandum, filed September 14, 1979, at pp. 5–6. The defendant concedes that there is no allegation that ALPA has a pending request for Northwest to discharge the plaintiffs. Therefore, this Court need not now decide whether section (e) would bind the plaintiffs in the event of their discharge. It is enough to decide that where, as here, the employees have neither been discharged nor face imminent discharge, the grievance procedure under section (e) is inapplicable.

▪ In addition, there is no merit to defendant's suggestion that plaintiffs have no justiciable claim until they are discharged. Their payment under protest of union service charges, if wrongfully required of them, gives rise to actionable damages under the proviso to 45 U.S.C. § 152, Eleventh.

▪ Because neither the Railway Labor Act nor the Union Security Agreement requires the arbitration of plaintiffs' dispute, they may invoke the jurisdiction of this Court to pursue their statutory claims under 28 U.S.C. § 1337. The defendant's Motion to Dismiss is accordingly DENIED.

▪ There is, however, some merit to defendant's prayer for summary judgment regarding plaintiffs' allegation that ALPA breached its duty of fair representation. Writing for the Ninth Circuit, Judge Eugene A. Wright explained that

Fair representation is a statutory duty of the union to represent fairly all its members, both in the conduct of collective bargaining and in the enforcement of the resulting collective bargaining agreement. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 11 L.Ed.2d 842 (1967). . . .

Of course, for such a claim to succeed, there must be "substantial evidence of fraud, deceitful action, or dishonest conduct" on the part of the union. [citing cases]

*Buzzard, supra*, 480 F.2d 35, at 40. The Fifth Circuit added

A DFR [duty of fair representation] breach occurs only when a union's dealings with the employer, ostensibly on behalf of a member of the bargaining unit, show that the union's conduct toward the member has been arbitrary, discriminatory, or in bad faith.

*Smith v. Sheet Metal Workers,* 500 F.2d 741, at 750 (5th Cir. 1974). Plaintiffs' present claim does not arise from ALPA's representing plaintiffs in "dealings with the employer". Rather, it arises in the direct relationship between a union and members of its bargaining unit. The statutory duty of "fair representation" does not apply in this context, and the defendant is entitled to a partial summary judgment as a matter of law. Federal Rule 56(c). Therefore, and only as to plaintiffs' claim that ALPA breached its duty of fair representation, summary judgment is GRANTED. As to plaintiffs' other claims arising under the Railway Labor Act, summary judgment is DENIED.