Thomas D. KLEMENS, et al.,
Plaintiffs-Appellees-Cross-Appellants,

v.

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL,
Defendant-Appellant-Cross-Appellee.

Nos. 81–3657, 81–3710.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1982.

Decided April 3, 1984.

Rex H. Reed, David T. Bryant, Springfield, Va., for plaintiffs-appellees-cross-appellants.

Daniel Kozma, Gary Green, Washington, D.C., for defendant-appellant-cross-appellee.

Before CHOY and FLETCHER, Circuit Judges, and MacBRIDE,* District Judge.

FLETCHER, Circuit Judge:

Defendant Air Line Pilots Association (ALPA) appeals from a judgment in a suit brought by former ALPA members for a declaration freeing them from the obligation to pay service charges under an agency shop agreement and reimbursement of service charges paid.

On cross-motions for summary judgment, the district court granted plaintiffs' motion. The court found that ALPA's insistence that plaintiffs pay service charges was illegal under section 2, Eleventh of the Railway Labor Act, 45 U.S.C. § 152, Eleventh (1976).

## I

## BACKGROUND

*A. The Railway Labor Act.*

The purposes of the Railway Labor Act (RLA), originally enacted in 1926 and substantially revised in 1934, *see Felter v. Southern Pacific Co.,* 359 U.S. 326, 326 n. 1, 79 S.Ct. 847, 850 n. 1, 3 L.Ed.2d 854 (1959), are, *inter alia,* to secure uninterrupted operations by commercial rail carriers, to protect the associational rights of the employees of such carriers, and to promote speedy settlement of labor disputes between the employees and the carriers. 45 U.S.C. § 151a (1976). Before 1951, the RLA prohibited carriers and labor organizations from making either union-shop or

* The Honorable Thomas J. MacBride, Senior District Judge for the Eastern District of California, sitting by designation.

agency-shop[1] agreements. *Felter,* 359 U.S. at 330–33, 79 S.Ct. at 851–53. In 1951, however, the RLA was amended to allow carriers and carrier employee unions to bargain for union or agency-shop clauses. This amendment enabled unions to be relieved of the burden of "free riders" (non members who receive the benefits of the union's representation but do not support the union). *See* Act of Jan. 10, 1951, ch. 1220, 64 Stat. 1238 (1951) (currently codified at 45 U.S.C. § 152, Eleventh (b) (1976)); *Felter,* 359 U.S. at 330–31, 79 S.Ct. at 851–52. Subsequently, the Railway Labor Act, including the union security provision of section 2, Eleventh, was made applicable to air carriers. *See* 45 U.S.C. § 181 (1976).

Section 2, Eleventh (a) of the RLA, 45 U.S.C. § 152, Eleventh (a), provides that carriers and their unions may:

> make agreements, requiring, as a condition of continued employment, that ... all employees shall become members of the labor organization representing their craft or class: *Provided,* That no such agreement shall require such condition of employment ... with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership.

Although the statute explicitly authorizes only union-shop agreements, it also permits agency-shop agreements. *See NLRB v. General Motors Corp.,* 373 U.S. 734, 741, 83 S.Ct. 1453, 1458–59, 10 L.Ed.2d 670 (1963). Collective bargaining agreements may include an agency-shop clause requiring an expelled union member to pay service charges as a condition of continued employment if the former member is expelled for not paying "the periodic dues, initiation fees, and assessments ... uniformly required" for membership. The charges cannot be demanded of an employee denied union membership or terminated from membership for any other reason. *See Local 1104, Communications Workers of America v. NLRB,* 520 F.2d 411, 416 (2d Cir.1975), *cert. denied,* 423 U.S. 1051, 96 S.Ct. 778, 46 L.Ed.2d 639 (1976).

### B. Facts.

In 1972, plaintiffs Klemens, Hill, Geifer and Maiers were employed as pilots by Northwest Airlines, Inc. They were also members of ALPA. At that time, the collective bargaining agreement between Northwest and ALPA included an agency-shop clause proper under section 2, Eleventh of the RLA. Following a 1972 strike at Northwest, ALPA imposed on those pilots who had returned to work a special one-time assessment (the I–72 assessment) to pay continuing benefits to Northwest pilots with low seniority who had participated in the strike but had not yet been called back to work. Plaintiffs refused to pay the special assessment and unsuccessfully challenged its legality before the ALPA appeals board. Although their appeal was rejected, plaintiffs continued to refuse to pay the I–72 assessment. They did not, however, attempt any further legal challenge to the assessment. ALPA subsequently expelled plaintiffs for their refusal to pay.[2]

After their expulsion, ALPA informed plaintiffs that under the union security clause, they were obligated to continue paying the equivalent of union dues or face termination from employment. In the period immediately following their expulsion, plaintiffs refused to pay the agency-shop fees demanded by the union. ALPA requested Northwest Airlines to discharge plaintiffs in compliance with the agency-shop clause. Plaintiffs subsequently paid the delinquent service fees and ALPA with-

---

1. A union-shop clause requires employees to join the union; an agency shop clause requires non-members to pay a union service charge, equivalent to dues.

2. Plaintiff Dearing was expelled from ALPA for refusing to return an alleged over-payment of strike benefits. Because his case differs substantially from that of the other plaintiffs, it will be discussed separately below.

drew its request. Plaintiffs have continued to pay fees under protest.

### C. Procedural History.

On May 8, 1979, plaintiffs filed suit in federal district court seeking a declaratory judgment that they could not be required, consistently with the provisions of section 2, Eleventh of the Railway Labor Act, to pay the disputed service charges. The pilots argued that their expulsion from ALPA for failure to pay the special Northwest strike assessment was not an expulsion for failure to pay the "periodic dues, initiation fees and assessments (not including fines and penalties) uniformly required" for union membership. Hence, under section 2, Eleventh, they could no longer be required to pay union support or service charges. The complaint further alleged that the procedure by which ALPA had imposed the I–72 assessment violated its constitution and section 101(a)(3) of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(3) (LMRDA).

The district court denied ALPA's motion to dismiss the complaint for lack of jurisdiction, holding that exhaustion of grievance procedures was not required and that the complaint stated a cause of action against the union for violation of section 2, Eleventh of the RLA. *Klemens v. Air Line Pilots Association, International,* 484 F.Supp. 186, 188, 189 (W.D.Wash. 1980).[3] Following this decision, the parties entered into a joint stipulation of facts, and submitted the case to the court on cross-motions for summary judgment.

The district court held, in an unpublished opinion, that the action was not barred by the statute of limitation. It agreed with the defendants that the calculation of payments under the I–72 assessment on the basis of a percentage of each pilot's salary did not violate section 2, Eleventh's uniformity requirement and that the assessment was not a penalty. It also agreed

that the statute does not require that assessments be periodic. It determined, however, that the procedure by which the I–72 assessment was authorized was not legal under the ALPA constitution. Consequently, the court ruled that under section 2, Eleventh, plaintiffs' expulsion from ALPA for failure to pay the I–72 assessment relieved them of any obligation to pay the equivalent of union dues. The district court, therefore, ordered ALPA to return to plaintiffs all service charges that they had been required to pay within three years of filing their complaint. The court did not decide two other issues raised by plaintiffs: whether the assessment was not "uniformly required" because only Northwest pilots had to pay it and whether the assessment violated the LMRDA.

ALPA appeals from the district court's ruling that plaintiffs are no longer required to pay service charges under the agency-shop agreement. The plaintiffs cross-appeal from the district court's ruling on some of their challenges to the assessment under the RLA.

### II

### DISCUSSION

ALPA contends that the district court lacked subject matter jurisdiction and that the statute of limitation has run on plaintiffs' claims. It also challenges the district court's decision on the merits. Because we conclude the district court erred in finding that a claim under section 2, Eleventh, could be based on the imposition of an assessment in violation of the union's constitution and by-laws, we reverse and remand for determination of issues not yet reached by the district court.

### A. Plaintiffs' Cause of Action Under the RLA.

■ The district court held that it had jurisdiction under 28 U.S.C. § 1337 (1976), which grants jurisdiction to federal district

---

**3.** In this initial decision, the district court also granted summary judgment to ALPA on the plaintiffs' breach of duty of fair representation

claim. *Klemens v. Air Line Pilots Association, International,* 484 F.Supp. at 190. The plaintiffs do not appeal from the dismissal of this claim.

courts over actions arising "under any Act of Congress regulating commerce ...." The court held that section 1337 gave it jurisdiction because plaintiffs had stated a cause of action arising under section 2, Eleventh of the Railway Labor Act. ALPA argues that, for a number of reasons, this case does not present a controversy justiciable in the federal courts. We affirm the district court on this issue, finding that Congress intended to create a cause of action against unions under section 2, Eleventh in cases such as this, and that the federal court is the appropriate forum for resolution of the controversy.

Plaintiffs point out that actions against unions for improper enforcement of union security agreements are properly heard in federal courts in cases governed by the National Labor Relations Act (NLRA). *See, e.g., Local 1104, Communications Workers of America v. NLRB,* 520 F.2d 411 (2d Cir.1975), *cert. denied,* 423 U.S. 1051, 96 S.Ct. 778, 46 L.Ed.2d 639 (1976). This may be a starting point, but it does not necessarily follow that such a case states a claim under the RLA.

The NLRA and the RLA are fundamentally different. Section 8(b)(2) of the NLRA makes it an unfair labor practice for a union to attempt to cause an employer to discharge an employee under a union security agreement or to otherwise discriminate against an employee who has been expelled from the union for a reason other than failure to pay uniformly required dues. 29 U.S.C. § 158(b)(2). Thus, had this action been governed by the NLRA, plaintiffs could have brought unfair labor practice charges against ALPA. *See Local 1104,* 520 F.2d at 313; *NLRB v. Hershey Foods Corp.,* 513 F.2d 1083 (9th Cir.1975).

The RLA, however, contains no similar provision making such union practices unlawful. Section 2, Eleventh allows union security agreements to be included in collective bargaining agreements provided that they do not require union membership as a condition of employment with respect to employees to whom membership has been denied for a reason other than failure to pay uniformly required dues and assessments. Agreements, or specific applications of agreements, that are inconsistent with this proviso are made unlawful only by section 2, Fifth, which prohibits an *employer* from conditioning employment on union membership except as allowed by section 2, Eleventh. Nothing in these provisions explicitly makes any union practice unlawful or creates a cause of action against a union.

Nevertheless, we conclude that in enacting section 2, Eleventh, Congress intended to create a cause of action against unions that attempt to enforce agency shop agreements in a manner inconsistent with the section 2, Eleventh proviso. Two other circuits have so held.

In *Bagnall v. Air Line Pilots Association, International,* 626 F.2d 336 (4th Cir. 1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 943, 67 L.Ed.2d 112 (1981), a case similar to this one, the Fourth Circuit allowed an employee to sue its union for a violation of section 2, Eleventh, to recover service charges paid under an agency shop agreement. The Third Circuit has held, as an alternative ground for decision, that "in suits involving section 2[, Eleventh] unions should be held liable for their actions in procuring a discharge which violates the employee['s] statutory rights." *Brady v. Trans World Airlines, Inc.,* 401 F.2d 87, 102 (3d Cir.1968) (footnote omitted) (employee discharged after refusing to pay back dues and reinstatement fee), *cert. denied,* 393 U.S. 1048, 89 S.Ct. 684, 21 L.Ed.2d 691 (1969).

We do not believe Congress intended to deny employees the right to hold their unions to the standard established in section 2, Eleventh. In making union security agreements lawful, Congress created an exception to section 2, Fifth's prohibition against employer coercion of union membership, and explicitly overrode state "right to work" laws prohibiting such agree-

ments.[4] By the exception, Congress made it possible for unions to achieve a great deal of power over employees: the power to cause their discharge. Congress was concerned about unions' abuse of this power, and enacted the proviso specifically to prevent it. The report of the Senate Committee on Labor and Public Welfare demonstrates this:

Your Committee desires to make it clear that the proviso clauses in paragraph eleventh (a) are designed to protect ... employees [who are denied membership in a labor organization] ... [I]f membership is denied or if an employee is expelled from membership for any reason other than his failure to tender the uniformly required periodic dues, initiation fees, and assessments, he cannot be required to relinquish his job because of his failure to join or remain a member of a labor organization.

S.Rep. No. 2262, 81st Cong., 2d Sess., *reprinted in* 1950 U.S.Code Cong. & Admin. News 4319, 4321–22.

The Supreme Court, in *Steele v. Louisville & Nashville Railroad Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), held that a union has a duty under the RLA to represent all employees fairly. The Court reasoned that in conferring on unions the power to act as the exclusive representative of all employees, Congress must have intended that they have a corresponding duty to protect the interests of those employees. 323 U.S. at 202, 65 S.Ct. at 232. In finding that section 2, Eleventh gives unions the duty to exercise their power of discharge under union security agreements only in a manner consistent with the statute, we adopt a similar approach.

ALPA argues that this dispute cannot be resolved in federal court because an adequate remedy is provided in the collective bargaining agreement. Under the agreement, an employee may not be discharged under the agency shop clause unless the issue has been determined by a neutral arbitrator. The decision of the arbitrator is final: if the employee loses, he is discharged.

 We agree with the Fourth Circuit that for an employee who does not want to risk discharge, "such a remedy is tantamount to no remedy at all." *Bagnall*, 626 F.2d at 342. We recognize that parties may, in a collective bargaining agreement, waive their rights to a judicial remedy. However, we do not find such a waiver here. The arbitration procedures in the contract apply only to employees who are threatened with discharge. Because plaintiffs have continued to pay service charges, they are in no position to invoke the arbitration remedy.

We recognize that in many areas Congress has left the resolution of railway labor disputes to the machinery of arbitration, mediation, and bargaining. Unless Congress intends the right it has created to be enforceable in the courts, they have no jurisdiction to resolve disputes. *See, e.g., Switchmen's Union of North America v. National Mediation Board,* 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943) (courts may not review Mediation Board's choice of bargaining representative); *General Committee of Adjustment v. Missouri-Kansas-Texas Railroad Co.*, 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943) (same); *Fechtelkotter v. Airline Pilots Association, International*, 693 F.2d 899 (9th Cir.1982) (courts lack jurisdiction over action by employees against union for alleged violation of agreement with employer). Courts must "defer to the dispute settlement procedures of the Act." *Fechtelkotter*, 693 F.2d at 901. However, disputes between a union and employees cannot be resolved by adjustment boards, which were established by the RLA to resolve grievances between employers and employees. *See* 45 U.S.C. § 153, First(i) (1976); *Steele*, 323 U.S. at 205, 65 S.Ct. at 233. Where, as in this case, the statute creates a right but does not provide an adequate enforcement mech-

---

**4.** The section applies "Notwithstanding ... any other statute or law ... of any state...." 45 U.S.C. § 152, Eleventh.

anism, we may conclude that the right is enforceable in federal court. "If the absence of jurisdiction of the federal courts meant a sacrifice or obliteration of a right which Congress had created, the inference would be strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control." *Switchmen's Union,* 320 U.S. at 300, 64 S.Ct. at 97. *See Virginian Railway Co. v. System Federation No. 40,* 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937) (courts may enforce RLA's requirement that employer bargain with employee representative); *Texas & New Orleans Railroad Co. v. Brotherhood of Railway & Steamship Clerks,* 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034 (1930) (courts may enforce right under RLA to be free from coercion in organization and choice of bargaining representative).

### B. Propriety of the I–72 Assessment Under the Union's Constitution.

■ Although plaintiffs present a claim for violation of the RLA over which the district court has jurisdiction under § 1337, we do not believe that jurisdiction encompasses their claim that the I–72 assessment is improper under the union's constitution and by-laws. The district court found that "[i]t is implicit in Section 2, Eleventh, that unions may only require payment of assessments which are legally authorized." We do not agree insofar as the legality referred to means conformity with the union's internal rules. There is nothing in the language or legislative history that suggests that in enacting § 2, Eleventh, Congress intended to regulate the conduct of unions' internal affairs. Congress was concerned only that unions not use the

mechanism of the union security clause to discriminate against some members or to enforce financial obligations (such as fines and penalties) other than uniformly required "periodic dues, initiation fees, and assessments...." 45 U.S.C. § 152, Eleventh. We find no basis for the claim that requiring service charges for an employee expelled from the union for refusing to pay an assessment not imposed in conformity with internal union procedures violates section 2, Eleventh. Therefore, we must reverse the district court's decision on this issue.[5]

Such a claim may indeed constitute a breach of contract justiciable under state law, but absent implication of a statutory right, the district court has no basis for jurisdiction under the RLA. *See Fechtelkotter,* 693 F.2d at 902. Plaintiffs argue that the imposition of the assessment violated the LMRDA. Because the district court did not reach this issue, we decline to do so and remand for consideration of this argument.

### C. The I–72 Assessments Under Section 2, Eleventh.

■ Plaintiffs challenge the district court's decision that the I–72 assessment was "uniformly required," within the meaning of section 2, Eleventh, even though, because it was based on percentage of salary, each pilot was required to pay a different amount. The district court relied on *Bagnall v. A.L.P.A.,* 626 F.2d 336 (4th Cir.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 943, 67 L.Ed.2d 112 (1981), which held that union dues based on a percentage of earnings were "uniformly required" under section 2, Eleventh, noting that the statute prescribes "uniformity" not "equal-

5. Our decision is not in conflict with *Bagnall,* 626 F.2d at 340–42, which, in a suit against a union alleging violation of section 2, Eleventh, determined that the union's attempt to collect a finance charge on non-members' monthly service charge payments was not authorized under the collective bargaining agreement's agency shop clause. Section 2, Eleventh, enables unions to obtain financial support from all employees in the bargaining unit, but they may do so only pursuant to a collective bargaining

agreement. Were an employer to discharge an employee for failure to pay union fees that were not authorized under the collective bargaining agreement, it would violate section 2, Fourth, which prohibits an employer from assisting in the collection of union dues except as otherwise authorized by the RLA. These provisions demonstrate that the statute is intended to prevent collection of union fees under threat of discharge unless authorized by the collective bargaining agreement.

ity." 626 F.2d at 339. That court held, and we agree, that the uniformity requirement was designed to prevent discrimination. The purpose is not violated when the imposition of charges is based on a reasonable non-discriminatory classification. It is certainly reasonable for a union to base dues or assessments on ability to pay. Cases decided under the NLRA, which also contains a uniformity requirement for dues enforced under a union security clause, are consistent with this approach. *See Aluminum Workers Trade Council*, 185 NLRB 69 (1970); *Stage Employees of Motion Picture Machine Operators Union*, 140 NLRB 74 (1963); *see also Schwartz v. Associated Musicians of Greater New York, Local 802*, 340 F.2d 228 (2d Cir.1964). We affirm the district court's decision on this issue.

We also find no merit in plaintiffs' challenge to the district court's findings that section 2, Eleventh, by its terms, does not require that assessments be periodic, and that they had failed to show the I–72 assessment was a penalty. We do not address plaintiffs' contention that the assessment was not "uniformly required" because it was imposed only on Northwest pilots, which was not decided by the court below. The district court may consider the issue on remand.

### D. The Statute of Limitation.

■ The district court ruled that a three year statute of limitation was applicable to the plaintiffs' claim under the Railway Labor Act.[6] The parties do not con-

test this conclusion.[7] The district court held that even though plaintiffs did not file suit until more than three years after their expulsion from ALPA, their claims were not barred. The district court reasoned that the claim for violation of section 2, Eleventh was based on the imposition of service charges, not on the expulsion from ALPA. These charges were imposed within the limitation period.

In order to apply the three-year statute of limitation to this case, we must determine when plaintiffs' alleged cause of action under the RLA accrued. For this we look to federal law. *Archer v. Airline Pilots Association, International*, 609 F.2d 934, 937 (9th Cir.1979), *cert. denied*, 446 U.S. 953, 100 S.Ct. 2920, 64 L.Ed.2d 810 (1980). *See also Chung v. Pomona Valley Community Hospital*, 667 F.2d 788 (9th Cir.1982). ALPA argues vigorously that, under federal law, the plaintiffs' cause of action accrued, and the statute of limitation began to run, no later than their expulsion from ALPA. The last such expulsion occurred on March 17, 1976, more than three years before the plaintiffs commenced the instant federal suit on May 8, 1979. To support its argument that under federal law plaintiffs' complaint is time-barred, ALPA cites *Local Lodge 1424, International Association of Machinists v. NLRB*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960) (*Bryan Manufacturing*). *Bryan Manufacturing* involved application of section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), to

6. Plaintiffs argue that ALPA waived the statute of limitation defense by failing to raise it below. We reject this argument. ALPA raised the statute of limitation defense in its memorandum in support of its motion for summary judgment, and the district court ruled on it. A statute of limitation defense may be raised in a motion for summary judgment, *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980), and the district court in this case clearly ruled on the statute of limitation as it applied to the RLA. Thus, even though ALPA failed to raise the defense in its answer or to include it as an issue in the stipulated pretrial order, plaintiffs are not prejudiced by our consideration of the statute of limitation issue, and ALPA properly can appeal from the district court's ruling on this issue.

*See Glaziers & Glassworkers Local 767 v. Custom Auto Glass Distributors*, 689 F.2d 1339, 1342 n. 1 (9th Cir.1982).

7. Because the parties do not appeal this ruling, we do not decide whether the Supreme Court's decision in *Del Costello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), requires that a six-month limitation period be applied in actions under the RLA. In any case, this circuit has declined to apply *Del Costello* retroactively. *See Edwards v. Teamsters Local Union No. 36*, 719 F.2d 1036 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1599, 80 L.Ed.2d 130 (CCH) B1715 (1984).

an unfair labor practice charge. Section 10(b) precludes review of a complaint based on an unfair labor practice occurring more than six months prior to the filing of the charge. In *Bryan Manufacturing,* the union committed an unfair labor practice by entering into a collective bargaining agreement that contained a union security clause at a time when the union did not represent a majority of the employees. 362 U.S. at 412–13, 80 S.Ct. at 824–25. More than six months after execution of the collective bargaining agreement, an employee filed an unfair labor practice charge challenging the continued enforcement of the union security clause. The Supreme Court found that the charge was time-barred because enforcement of the union security clause by itself was permissible. *Id.* at 417, 80 S.Ct. at 827. The enforcement could be rendered invalid only by resurrecting a time-barred charge, i.e., execution of the collective bargaining agreement with a security clause at a time when the union did not have majority status. To convert enforcement of a collective bargaining agreement, perfectly lawful on its face, to an unfair labor practice by reference to an event that, because of a time limitation, could not be the subject of an unfair labor practice complaint, would have vitiated the policies underlying the six-month limitation. *Id.* at 419, 80 S.Ct. at 828. Thus, although enforcement of the agreement continued, it was not a "continuing violation" because the initial execution of the agreement was illegal and challenge to that execution was time barred.

This court's 1977 decision in *NLRB v. Local 30, International Longshoremen's & Warehousemen's Union,* 549 F.2d 698 (9th Cir.1977), interprets *Bryan Manufacturing* to mean that the six-month time period for filing an unfair labor practice charge under section 10(b) begins to run when "the laborer [is] in a position to file

the unfair labor practice charge, *i.e.,* upon receipt of the notice of the penalty." *Id.* at 701 (citing and discussing *Bryan Manufacturing* ). We elaborated on this rule of accrual in *NLRB v. California School of Professional Psychology,* 583 F.2d 1099 (9th Cir.1978), where we stated that "the time limit of § 10(b) should begin running when the employee can first file an unfair labor practice charge to protect his interests." *Id.* at 1101. A similar rule is appropriate here.

■ Our analysis of the cause of action under section 2, Eleventh, makes clear that plaintiffs' cause of action did not accrue until the union attempted to enforce the agency-shop clause against them. The imposition of an assessment and the expulsion from union membership are not themselves actionable under section 2, Eleventh. The statute regulates only the use of the union security agreement to cause discharge or enforce service fees. Because ALPA's attempts to enforce the agency-shop clause occurred during the three years prior to the filing of this action, plaintiffs' claim under the RLA is not time barred.[8]

### III

### *Plaintiff Dearing's Claims.*

Unlike the other plaintiffs, Dearing does not base his claim on the I-72 assessment. His case centers around his refusal to return to ALPA an overpayment of strike benefits.

When ALPA demanded return of the overpayment, Dearing refused and tendered his resignation. ALPA, however, declined to accept the resignation and continued to press its claim. When Dearing again refused to pay, ALPA expelled him from the union. The district court found

---

8. We note that application of the statute of limitation to a claim challenging the legality of the assessment itself or of plaintiffs expulsion from the union on a theory other than violation of section 2, Eleventh, could result in a different outcome. The assessment and expulsion occurred more than three years before the filing of this suit, and the current obligation to pay dues may be merely a continuing effect of the prior improper act, as in *Bryan.* On remand, the district court may consider whether plaintiffs' remaining claims are barred by the statute of limitation.

that under section 2, Eleventh the union could not force Dearing to pay service charges because he had been expelled for a reason other than failure to pay dues and assessments. It awarded damages to Dearing, reduced by the amount of unreturned strike benefits for which ALPA had counterclaimed.

On appeal, ALPA does not challenge the conclusion that if ALPA expelled Dearing for refusal to repay the benefits it lost the right to demand service charges. However, it argues that Dearing resigned voluntarily and therefore cannot claim any protection under section 2, Eleventh.

█ The district court found that ALPA had declined to accept Dearing's resignation, and elected to expel him instead. This is a factual conclusion. On reviewing the evidence, we do not find it clearly erroneous. *See* Fed.R.Civ.P. 52(a). Therefore, the district court did not err in awarding Dearing reimbursement of his service charges.

█ Dearing challenges the district court's award to ALPA on its counterclaim on two grounds. First, he contends the counterclaim is barred by the statute of limitations. The district court held that because ALPA's claim arose out of the same transaction as Dearing's claim, it was not time barred. We agree. A claim for recoupment that would otherwise be barred by the statute of limitation may be brought to defeat a claim arising out of the same transaction. *See* 3 J. Moore, *Moore's Federal Practice* § 13.11 (2d ed. 1983). ALPA's counterclaim arises out of the same transaction as does Dearing's claim.

Second, Dearing argues that under the ALPA constitution, expulsion or suspension is the union's exclusive remedy against a member who fails to meet his or her financial obligations. In *United Glass Workers' Local 188 v. Seitz*, 65 Wash.2d 640, 399 P.2d 74 (1965), the Washington Supreme Court rejected a union's civil action for payment of a fine. The court found that the union constitution provided for expulsion or suspension as the exclusive remedy

for failure to pay fines. *Id.* at 642, 399 P.2d at 75. The court premised its conclusion on the principle that "when parties to a contract foresee a condition which may develop and provide in their contract a remedy for the happening of that condition, the presumption is that the parties intended the prescribed remedy as the sole remedy...." *Id.*

Even were we to agree with the reasoning of *Seitz*, it is not applicable to this case. The ALPA constitution provides expulsion as the remedy for any member's failure to pay "his dues, dues adjustment, assessment, monetary fines, arrangement plan obligations, or any applicable finance charge thereon...." It does not mention the mistaken overpayment of strike benefits. Rather, it is concerned with ensuring the collection of ordinary union revenue and enforcing union penal measures. The contract does not limit ALPA's remedies for recouping the overpaid strike benefits.

## CONCLUSION

The judgment in favor of plaintiff Dearing is AFFIRMED. The judgment in favor of the other plaintiffs is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.