**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ALI BAHREMAN,

*Plaintiff-Appellant*,

v.

ALLEGIANT AIR, LLC;
TRANSPORT WORKERS UNION
OF AMERICA LOCAL 577,

*Defendants-Appellees*.

No. 23-16156

D.C. No.
2:20-cv-00437-
ART-DJA

OPINION

Appeal from the United States District Court
for the District of Nevada
Anne R. Traum, District Judge, Presiding

Argued and Submitted October 7, 2024
San Francisco, California

Filed December 10, 2024

Before: M. Margaret McKeown, Lucy H. Koh, and
Anthony D. Johnstone, Circuit Judges.

Opinion by Judge Johnstone

## SUMMARY[*]

### Railway Labor Act

The panel affirmed the district court's summary judgment in favor of Allegiant Air and the Transport Workers Union in Allegiant flight attendant Ali Bahreman's action alleging that the Collective Bargaining Agreement between Allegiant and the Union violated the Railway Labor Act of 1926.

The Agreement gives employees a choice between paying dues to join the Union or paying agency fees without joining the Union. The Agreement's enforcement mechanism gives employees a third choice: pay neither dues nor fees, and lose bidding privileges for work schedules. Bahreman chose not to pay any fees, and lost his bidding privileges.

The panel held that the Railway Labor Act does not prohibit a collective bargaining agreement that conditions seniority-based bidding privileges—not continued employment—on payment of either union dues or agency fees.

Addressing Bahreman's claims that the Agreement's suspension of bidding privileges for nonpayment of agency fees violates the Act, the panel held that (1) the Agreement does not violate the Act's anti-coercion provision because it does not induce employees to join the Union, (2) the Act does not prohibit unions from reaching collective bargaining

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

agreements with different terms other than those that the Act explicitly permits, and (3) the Union did not violate its duty of fair representation because the Union enforced the Agreement equally among all members of the bargaining unit.

**COUNSEL**

Matthew B. Gilliam (argued) and Milton L. Chappell, National Right to Work Legal Foundation Inc., Springfield, Virginia, for Plaintiff-Appellant.

Andrew D. McClintock (argued), Ford & Harrison LLP, Atlanta, Georgia; Jacquelyn L. Thompson, Ford & Harrison LLP, Washington, D.C.; Proloy K. Das, I, Ford & Harrison LLP, Hartford, Connecticut; Joshua A. Sliker, Jackson Lewis PC, Las Vegas, Nevada; Osnat K. Rind (argued) and Mark Richard, Phillips Richard & Rind PA, Miami, Florida; Richard G. McCracken, McCracken Stemerman & Holsberry LLP, Oakland, California; for Defendants-Appellees.

## OPINION

JOHNSTONE, Circuit Judge:

The Railway Labor Act of 1926, enacted to prevent labor disputes from interrupting interstate commerce, requires carriers and their employees to resolve disagreements through collective bargaining and arbitration. Over time, Congress has tailored the Act's terms to protect the freedom of employees to associate by joining—or not joining—labor unions. First, in response to carriers' use of "company unions," Congress amended the Act to forbid carriers from interfering with employee organizing. Second, in response to "free riders," Congress amended the Act to permit carriers and unions to compel union membership through "union security agreements," and to deduct associated payments from wages. Then the Supreme Court, in response to freedom of association concerns, specified that the Act did not require employees to support union activities unrelated to collective bargaining, like political spending. So carriers and unions began to replace their "union-shop" agreements, which require all employees to join the union, with "agency-shop" agreements, which allow employees to forgo union membership as long as they pay "agency fees" to support collective bargaining. And the Supreme Court affirmed that the Act permits these agreements.

Ali Bahreman worked as a flight attendant at Allegiant Air, a carrier under the Act. Allegiant and the Transport Workers Union negotiated a Collective Bargaining Agreement that gives employees a choice between paying dues to join the union or paying agency fees without joining. The Agreement's novel enforcement mechanism, in effect, gives employees a third choice: pay neither dues nor fees,

and lose seniority-based bidding privileges for work schedules. Bahreman chose not to pay and lost his bidding privileges. He sued Allegiant and the Union, claiming that the Agreement violates several provisions of the Act. The central question that Bahreman's claims present is whether the Act prohibits a collective bargaining agreement that conditions seniority-based bidding privileges—not continued employment—on payment of either union dues or agency fees. In agreement with the district court, we answer no.

## I.  Bahreman's challenge to the Agreement

Allegiant and the Transport Workers Union, which represents flight attendants for that carrier, entered a Collective Bargaining Agreement. Section 29 of the Agreement, entitled "Union Security," offers flight attendants a choice between becoming dues-paying members of the Union or paying an agency fee in the form of a "service charge." A flight attendant who fails to pay membership dues (for members) or the service charge (for nonmembers) loses bidding privileges for work schedules, including for flight assignments and leave. Flight attendants receive their flight assignments, work schedules, and other benefits such as vacation and leave through a seniority-based bidding program, so a loss of bidding privileges means a loss of important benefits.

Bahreman began working for Allegiant as a flight attendant in 2015. He chose not to join the Union or pay the service charge. Allegiant therefore suspended his bidding privileges under the Agreement, beginning in 2019 and lasting until his resignation in 2022. Bahreman sued Allegiant and the Union, seeking declaratory relief, injunctive relief, and damages resulting from a loss of his

bidding privileges. He claims that the Agreement's suspension of bidding privileges for nonpayment of agency fees violates the Act in three ways. First, it deviates from the employment-termination remedy in the Act's "union security agreements" provision. Second, it coerces him to join the Union in violation of the Act's "anti-coercion" provision. Third, it violates the Union's duty of fair representation to nonunion workers.

The district court granted summary judgment to Allegiant and the Union on all claims. Bahreman timely appeals. We review the district court's summary judgment order de novo. *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir. 2021).

## II.  The Railway Labor Act

Congress passed the Act to promptly resolve disputes between rail carriers and their employees to avoid interrupting the transportation that sustains interstate commerce. Railway Labor Act, Pub. L. No. 69-257, 44 Stat. 577 (1926); *see also* 45 U.S.C. § 151a(1). The Act does so by imposing a duty on both parties "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions" and "to settle all disputes" through the Act's arbitration processes. 45 U.S.C. § 152, First. After the 1926 enactment, labor unions soon complained "that the carriers interfered with the employees' freedom of choice of representatives by creating company unions." *Int'l Ass'n of Machinists v. Street,* 367 U.S. 740, 759 (1961). Congress responded in 1934 by amending the Act to guarantee employees "the right to organize and bargain collectively through representatives of their own choosing," and prohibiting carriers from "influenc[ing] or coerc[ing] employees" in their choice of union membership.

45 U.S.C. § 152, Fourth; Act of June 21, 1934, ch. 691, 48 Stat. 1187. Congress extended the Act to air carriers two years later. 45 U.S.C. § 181; *see* Act of April 10, 1936, ch. 166, 49 Stat. 1189.

A decade later, the Supreme Court held that, under the Act, "a union's status as exclusive bargaining representative carries with it the duty fairly and equitably to represent all employees . . . , union and nonunion." *Street*, 367 U.S. at 761 (citing *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192 (1944)). This created a "free rider" problem, as "[n]onunion members . . . share[d] in the benefits derived from collective agreements negotiated by the railway labor unions but b[ore] no share of the cost of obtaining such benefits." *Id.* at 761–62 (quoting H.R. Rep. No. 81-2811, at 4 (1950)). Again, Congress responded. In 1951, it amended the Act to permit carriers and unions "to make agreements, requiring, as a condition of continued employment, that . . . all employees shall become members of the labor organization representing" them. 45 U.S.C. § 152, Eleventh(a); Act of Jan. 10, 1951, ch. 1220, 64 Stat. 1238. In short, the Act permits but does not require union shops. It also permits "checkoff" agreements, under which employees can authorize the carrier to deduct "any periodic dues, initiation fees, and assessments" from paychecks and pay them to the union. 45 U.S.C. § 152, Eleventh(b).

In 1961, the Supreme Court further clarified the Act's scope. *Street*, 367 U.S. at 767. The Court explained that Section 2, Eleventh "contemplated compulsory unionism to force employees to share the costs of negotiating and administering collective agreements" and settling disputes under them. *Id.* at 764. But, the Court held, "unions must not support [political] activities, against the expressed wishes of a dissenting employee, with his exacted money." *Id.* at 770.

Unions and carriers adapted by negotiating new terms in collective bargaining agreements. Instead of union-shop agreements, some unions and carriers negotiated agency-shop agreements, which do not require formal union membership or payment of union dues. Instead of joining the union, an employee can pay an agency fee, used only to support collective bargaining and administration of the contract. *See Ellis v. Bhd. of Ry., Airline & S.S. Clerks*, 466 U.S. 435, 439, 446–48 (1984) (analyzing under Section 2, Eleventh an agreement interpreted so that "employees need not become formal members of the union, but must pay agency fees"). An agency shop "places the option of membership in the employee while still requiring the same monetary support as does the union shop." *NLRB v. Gen. Motors*, 373 U.S. 734, 744 (1963) (applying the National Labor Relations Act).

Although Section 2, Eleventh refers to "members" and "membership" of a "labor organization," the Supreme Court has read the Act to permit agreements under which nonmembers also must also financially support unions' collective bargaining activity. In other words, the Act "allows . . . agency-shop agreements." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 872 (1998) (citing 45 U.S.C. § 152, Eleventh); *see also Ellis*, 466 U.S. at 446–48. This interpretation of the Act permits a form of collective bargaining agreement that arose after its enactment: the agency-shop agreement. *See Ellis*, 466 U.S. at 447. As the Court explained in authorizing agency-shop agreements under the similar language of the National Labor Relations Act, any "difference between the union and agency shop . . . is more formal than real," because "'[m]embership' as a condition of employment is whittled down to its financial core." *Gen. Motors*, 373 U.S at 742, 744. Thus, for present

purposes, the terms "members" and "membership" include employees who join the union and those who pay agency fees. *See Air Line Pilots*, 523 U.S. at 872; *Klemens v. Air Line Pilots Ass'n, Int'l*, 736 F.2d 491, 494 (9th Cir. 1984).

## III.  The Agreement does not violate the Act.

The question presented here is whether the Act permits a collective bargaining agreement that conditions only bidding privileges, and not continued employment, on payment of either union dues or agency fees. All parties agree that, because it does not condition continued employment on payment of dues or fees, the Agreement is not a "union security agreement" as defined by the Act. They disagree on what follows. To Bahreman, this means that the Agreement is not permitted by the union security authorization in Section 2, Eleventh, which he contends is the only exception to the anti-coercion prohibition in Section 2, Fourth. To Allegiant and the Union, this means that the Agreement is not contemplated by either the Act's union security authorization or its anti-coercion prohibition. On that view, like any other negotiated term of employment not covered by the Act, the Agreement is lawful.

### A.  The Agreement does not induce employees to join the Union in violation of Section 2, Fourth.

Bahreman claims the Agreement violates the Act's anti-coercion provision in Section 2, Fourth. To protect employees' "right to organize and bargain collectively through representatives of their own choosing," Section 2, Fourth prohibits carriers from "influenc[ing] or coerc[ing] employees in an effort to induce them to join . . . any labor organization." 45 U.S.C. § 152, Fourth. Under the Agreement, an employee who pays neither dues nor fees loses bidding privileges regardless of union membership. So

we ask whether an agreement that treats union members the same as any other bargaining unit member coerces employees to join the union. We hold that it does not.

Bahreman argues that the Agreement induces him to join the Union by requiring that he either pay agency fees or forgo bidding privileges. But requiring agency fees does not incentivize union membership because, under the Agreement, those fees cannot exceed union dues. In fact, according to Bahreman, monthly agency fees at Allegiant were $25 compared with $31 for union dues. Because it would cost Bahreman less to pay agency fees than to pay union dues, there is no financial inducement to join the Union. Similarly, the suspension of bidding privileges for nonpayment of agency fees does not induce union membership because members face the same consequence for nonpayment of union dues. Employees who pay union dues or agency fees maintain their bidding privileges. Those who do not make those payments lose their bidding privileges. Allegiant cannot very well coerce Bahreman into the Union by employing him under terms that treat union members and nonmembers alike.

So Bahreman turns to a different statute not at issue: Section 8(a)(3) of the National Labor Relations Act. 29 U.S.C. § 158(a)(3). Section 8(a)(3) prohibits reductions in seniority for nonpayment of union dues in the absence of a valid union security agreement. *See Radio Officers' Union of Com. Telegraphers Union, AFL v. NLRB*, 347 U.S. 17, 24, 41–42 (1954). Bahreman argues that, because Section 8(a)(3) of the NLRA and Section 2, Eleventh(a) of the Act share "nearly identical language," *Comm'ns Workers of Am. v. Beck*, 487 U.S. 735, 745–46 (1988), we should import this prohibition into Section 2, Fourth. This argument fails. The NLRA does not apply to Allegiant and "cannot be imported

wholesale into the railway labor arena." *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 439 (1989) (quoting *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383 (1969)). Because the Act lacks the NLRA's language prohibiting "discrimination in regard to . . . any term or condition of employment," 29 U.S.C. § 158(a)(3), there is no analogous textual grounding for an attack on the Agreement's seniority-related provisions. Neither the NLRA nor *Radio Officers' Union* controls.

Nor does the Agreement violate Section 2, Fourth's prohibition on "deduct[ing] from the wages of employees any dues, fees, assessments, or other contributions payable to labor organizations." That is because Section 2, Eleventh(b) expressly permits a carrier and a labor organization together "to make agreements providing for the deduction" of these payments. 45 U.S.C. § 152, Eleventh(b). As the First Circuit explained, "[r]ead together, §§ 152, Fourth and Eleventh(b) provide that carriers may not unilaterally deduct dues from employee wages, but may do so upon the agreement of all parties involved." *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 235 (1st Cir. 1996). And the Act allows checkoff agreements for agency fees. *See Felter v. S. Pac. Co.*, 359 U.S. 326, 330–31 (1959). "Thus, even in the absence of a union shop agreement" permitted by Eleventh(a), "employees and carriers may agree to a dues deduction schedule under § 152, Eleventh(b)." *Wightman*, 100 F.3d at 235.

## B. Section 2, Eleventh(a) does not prohibit the Agreement.

Bahreman also claims that the Agreement violates Section 2, Eleventh(a). That provision permits a carrier and

a union "to make agreements, requiring, as a condition of continued employment, that . . . all employees shall become members of the labor organization representing their craft or class." 45 U.S.C. § 152, Eleventh(a). The Agreement does not require employees to join the Union or pay agency fees as "a condition of continued employment." So we ask whether this permissive statute prohibits an agreement with different terms. We hold that it does not.

Two material terms distinguish the Agreement here from the agreements contemplated by Eleventh(a). First, the Agreement does not require membership in a union. Instead, it allows employees to pay an agency fee to support "the administration of the Agreement and the representation of" employees. And as we have observed, "[a]lthough the statute explicitly authorizes only union-shop agreements, it also permits agency-shop agreements." *Klemens*, 736 F.2d at 494. Second, unlike a typical agency-shop agreement, the Agreement does not require payment of agency fees "as a condition of continued employment." Instead of being fired, employees who fail to pay agency fees, like member employees who fail to pay union dues, forgo their bidding privileges. This second distinction, Bahreman claims, disqualifies the Agreement under Section 2, Eleventh(a).

The text of Section 2, Eleventh(a) is permissive. It provides that carriers and unions "shall be permitted" to enter into agreements that require payment of union dues as a condition of continued employment. 45 U.S.C. § 152, Eleventh(a). It does not by its terms prohibit carriers and unions from reaching collective bargaining agreements other than those it explicitly permits, including agency-shop agreements. *See Street*, 367 U.S. at 766–67; *Ellis*, 466 U.S. at 438–39. Bahreman's alternate, prescriptive gloss on the Act contravenes its purpose: to provide the means for

carriers and unions to collectively bargain for the pay, rules, and working conditions that the parties want. The Agreement reflects the deal struck by Allegiant and the Union. It links the bargained-for bidding privileges to the agency fees that support the bargaining. This resolves the problem of nonpaying employees taking a free ride to the bidding privileges the Union negotiated. Thus, the Agreement arose from the Act's collective-bargaining process, does not contradict its text, and is consistent with its anti-free rider purpose.

Bahreman points to cases, like *Ellis*, 466 U.S. at 438–39, and *Klemens*, 736 F.2d at 494, 496–98, that he says limit the enforcement of agency-shop agreements to termination. But *Ellis* holds only that unions and carriers may negotiate a contract "requiring all employees to become members of *or* to make contributions to the union." 466 U.S. at 448 (emphasis added). *Ellis* says nothing about whether the Act permits other types of agreements that encourage payment of agency fees. *Klemens* offers even less help to Bahreman. There, we held that the Act allows "a cause of action against unions that attempt to enforce agency shop agreements in a manner inconsistent with" Section 2, Eleventh(a). *Klemens*, 736 F.2d at 496. We explained that unions may collect dues or fees only under a lawful collective bargaining agreement, but we said nothing about the other terms that such an agreement could contain. *See id.* at 496, 498 n.5. These cases do not require a departure from the permissive plain meaning of Section 2, Eleventh(a).

## IV. The Union did not violate its duty of fair representation.

When a union becomes the exclusive bargaining representative for a group of workers, it must "represent

fairly the interests of all bargaining-unit members." *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979); *see also Demetris v. Transp. Workers Union of Am., AFL-CIO*, 862 F.3d 799, 804–05 (9th Cir. 2017) (explaining this duty also applies to unions under the Act). A union breaches this duty "when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Demetris*, 862 F.3d at 805 (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)). The Union's actions here were not discriminatory because all employees who fail to pay union dues or agency fees face the same result, and no individual employee is singled out. *See Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971). Nor were they arbitrary, discriminatory, or in bad faith because the Union acted according to the Agreement when it suspended Bahreman's bidding privileges. *See Burkevich v. Air Line Pilots Ass'n, Intern.*, 849 F.2d 346, 349 (9th Cir. 1990); *Demetris*, 862 F.3d at 805.

\*          \*          \*

The Railway Labor Act empowers carriers and their employees, through unions, to collectively bargain the terms of employment. Its protections neither prescribe termination nor proscribe alternative conditions on agency-fee agreements made and maintained through its processes. Allegiant therefore does not unlawfully induce union membership under Section 2, Fourth. Nor is the Agreement prohibited by Section 2, Eleventh. And the Union does not violate its duty of fair representation in enforcing the Agreement equally among all members of the bargaining unit.

**AFFIRMED.**